## David Lynn, James A. Milholland, William Walsh, and Richard D. Johnson *vs.* The Mayor and City Council of Cumberland.

*City tax Collector—Action on Official bond—Liability of Sureties — Evidence — Instruction — Verdict — Burden of Proof.*

By an ordinance of the City of Cumberland, the city tax collector was required to be elected annually, and it was provided that he should "hold his office for one year, or until his successor is duly elected and qualified." A tax collector was elected in June, 1886, and gave bond, with sureties that "during his continuance in said office" he would well and truly account for and pay over all moneys which he should receive for or on account of the city. In June, 1887, he was again elected collector, but failed to give a new bond and take the oath of office. Notwithstanding this failure to qualify, he made collections, but did not pay over all the money received by him for the two fiscal years 1886-87 and 1887-88. On a suit on the bond given by him when he was first elected in June, 1886, it was Held:

That his sureties were liable for the moneys collected by him during the second fiscal year.

Whether a warrant to collect has been delivered to the tax collector or not, is immaterial, so far as the liability of the sureties on his bond is concerned, as he becomes accountable for taxes voluntarily paid to him though he has received no warrant.

The fact that the tax-books did not specify in each tax payer's account, as required by ordinance, the amount levied for general purposes, the amount levied for interest, and the amount levied for the sinking fund as separate items, but gave only the aggregate of these several items in each instance, is immaterial, so far as respects the liability of the sureties on the bond of the tax collector.

In a suit on the official bond of a city tax collector for failure to turn over money collected, it is not error, where the entries on

the tax-books are numerous, to allow the witness to testify to the sum total, as added up by himself, of the items which the collector had admitted to him had been collected, the Court stating at the same time to the jury that the additions of the witness were not conclusive on them, but that they were at liberty to ascertain from the books themselves whether the amounts were properly added up.

The fact that the witness referred to a rejected audit to refresh his recollection, did not affect the admissibility of his testimony, where, after refreshing his memory, he spoke from an independent recollection and not from the audit.

In an action upon the bond of a tax collector for amounts collected in two separate years, the verdict against the defendants must be for one entire sum, and need not specify the amounts due on each year separately.

The reports made by the tax collector to the Mayor and City Council, showing the amounts collected by him, were *prima facie* correct as against him and his sureties, and it was incumbent on the defendants to point out any errors therein, if such existed.

Entries made by the collector in the tax-books showing receipts of money by him, were *prima facie* evidence that those sums were collected by him, and his mere statement, or that of any one else, that there were errors in the entries, was not sufficient to overcome the probative force of these entries as admissions.

APPEAL from the Circuit Court for Alleghany County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, PAGE, ROBERTS, McSHERRY, and BRISCOE, J.

*William E. Walsh,* and *Ferdinand Williams,* (with whom was *James W. Thomas,* on the brief,) for the appellants.

*Will S. Bridendolph,* and *A. Hunter Boyd,* for the appellee.

Lynn, *et al.* *vs.* Mayor, &c. of Cumberland.

McSHERRY, J., delivered the opinion of the Court.

This is a suit upon the official bond of the tax collector of the City of Cumberland. The facts which give rise to the principal question involved are these: On the seventh day of June, eighteen hundred and eighty-six, David Lynn was elected by the City Council of Cumberland collector of the municipal taxes and water-rents payable for the fiscal year 1886–7. By an ordinance passed under the authority conferred by the charter, the city tax collector was required to be elected annually on the first Monday of June, and it was provided that he should "hold his office for one year, or until his successor is duly elected and qualified, unless sooner removed by death, resignation or other lawful cause." After his election he gave bond with James A. Millholland, William Walsh, and Richard D. Johnson as sureties. The condition of the bond is in these words: "The condition of the above obligation is such, * * * * * * if the said David Lynn, during his continuance in said office, shall in all things diligently and faithfully discharge the duties of said office, and shall well and truly account for and pay over agreeably to the said charter of said City of Cumberland, and the ordinances passed in pursuance thereof, all moneys which he shall receive for or on account of the said corporation, known as the Mayor and City Council of Cumberland, and shall collect and pay over to the city treasurer of said city at least twenty-five *per centum* of the levy placed in his hands quarterly, dating from the date of said levy, and shall collect and account for all water-rents due said city and placed in his hands for collection, then this obligation to be void, &c." Upon being furnished with the lists of tax-payers and water-renters and a warrant in due form, he proceeded to make collections. On the first Monday of June, 1887, he was again elected collector, but failed to give a new bond and to

take the oath of office. Notwithstanding this failure to qualify, the tax-books and water-rent books for the fiscal year 1887–8 went into his possession, with a warrant sealed with the corporate seal, but not signed by the Mayor, annexed thereto, and he made collections of part of the taxes and water-rents for that year. Failing to pay over all the moneys received by him for the two fiscal years 1886–7 and 1887–8, the bond given when he was first elected in June, 1886, was put in suit. Two of the counts of the *narr.* were demurred to, and upon the demurrer being overruled numerous pleas were filed, some of which were traversed and others of which were demurred to. Particular reference to them is not necessary, though two of them will be adverted to later on. The issues ultimately evolved raised the question of the liability of the sureties for the defaults of the collector Lynn, during the second fiscal year for which he had been elected; and this liability embraced defaults in not collecting, and defaults in not paying over the sums actually collected. As the city abandoned in the Court below, and in this Court, its claim to recover against the sureties for mere failures to collect what ought to have been collected during the second fiscal year, we need not enter upon a discussion of the counts of the *narr.* relating to .that question. The other ground of recovery—the alleged liability of the sureties for the neglect of Lynn to pay over all the money collected by him during the second fiscal year—is the controlling question in the case.

As a surety's liability is, in all cases, founded exclusively upon contract, and cannot in any instance be extended beyond the strict import of the obligation which he has expressly assumed, his responsibility to the City of Cumberland for the default of his principal in not paying over the taxes and water-rents actually collected by him for the fiscal year 1887–8, must be

found in the bond executed and delivered in June, 1886, and in the charter and ordinances therein referred to. By the terms of the ordinance relating to the election of the city collector, and by the recitals in the bond sued on, the duration of Lynn's office was one year *and* until his successor was duly elected and qualified. It was not limited merely to the year beginning in June, 1886, and ending in June, 1887, but was distinctly extended beyond the latter date, and included the period intervening between that time and the election and qualification of a successor. Lynn was rightfully an incumbent of the office so long as his official term continued, and his official term continued until terminated by the election and qualification of his successor. In June, 1886, his sureties bound themselves that "during his continuance in said office"—that is to say, during the fiscal year 1886–7 *and* until his successor should be elected and should qualify—he would "well and truly account for and pay over * * * * * all moneys which he shall receive for or on account of said-corporation;" and that he would "collect and account for all water-rents due said city and placed in his hands for collection." By this obligation they fixed upon themselves a liability to the city, if, during Lynn's continuance in office—hence until the election and qualification of his successor—he failed to account for and to pay over the moneys received by him as collector for or on account of the corporation; and that liability is, according to the plain letter of the bond, co-extensive with the duration of his official term. Now, he was re-elected in June, 1887, but failed to qualify, for he neither took the oath of office nor gave a new bond. He therefore continued in the office of collector under his first election, and as the express terms of the contract of the sureties bound them to indemnify the city against his defaults whilst he remained rightfully collector, the bond covers his failure

to pay over to the corporation all the taxes and water-rents (less his commissions) which he actually received for the second fiscal year; and the sureties are clearly liable for his omission to do so. This conclusion is fully supported by the recent case of *Archer, et al. vs. State,* 74 *Md.,* 427.

But it was vigorously contended in the argument that the case at bar is distinguishable from *Archer's Case,* and it was earnestly insisted that the principle announced in that decision applies only where the duties of the office are continuous, and not where the appointment involves merely the performance of a particular, specific function, the performance of which exhausts the whole purpose for which the appointment was originally made. Many cases were cited and relied on in support of this distinction, but, without pausing to review them, it is obvious that the question now before us does not fall within the reasons underlying those cases. When the contract of the surety guarantees only the performance of a specific act, or the performance of particular duties within fixed and defined limits of time, the non-performance of some other act, or the non-performance of similar duties at some other and different time, can fasten no liability on the surety; because these defaults would be outside of his undertaking. But for breaches of the condition of the bond committed by the principal whilst lawfully in office, the surety, if the bond covers the whole official term, is clearly liable. The Maryland cases from *Thomas vs. Owens,* 4 *Md.,* 221, to *Robb vs. Carter,* 65 *Md.,* 321, and *Archer's Case,* 74 *Md.,* 427, uniformly hold that even where an officer has been appointed for a definite term, he is entitled to hold after the expiration thereof until his successor is elected and qualifies—the superadded period being in fact a part of his rightful term of office. This being decisively settled, and the surety being liable for

Lynn, *et al. vs.* Mayor, &c. of Cumberland.

a breach of the bond during the principal's lawful term, unless the bond expressly restricts that liability to a definitive portion of such term, it necessarily follows that the liability of the surety extends to the super-added as well as to the preceding portion of the term. The law fixes the duration of the term to be until the election and qualification of a successor, and this the bond reiterates and binds the sureties for that period. If the bond does not cover the second fiscal year it must be because Lynn was not then in office as collector. His continuance in office without a bond was obviously not contemplated. But he did continue in office—he did precisely what the ordinance assumed might occur and what, as the recital in the bond shows, the sureties knew was liable to happen—he failed to qualify the second time, and therefore continued to hold under his original election. Under these circumstances the sureties are liable. *Murfree, &c., sec.* 628; *State, &c. vs. Berg, et al.,* 50 *Ind.,* 496; *Butler, et al. vs. State, &c.,* 20 *Ind.,* 169; *Thompson, Adm'r, et al. vs. State,* 37 *Miss.,* 518; *Placer Co. vs. Dickerson,* 45 *Cala.,* 12; *State, &c. vs. Kurtzeborn,* 78 *Mo.,* 98; *Long vs. Seay,* 72 *Mo.,* 648; *Wheeling vs. Black, et al.,* 25 *W. Va.,* 276. Had the bond been conditioned for the faithful collection of a single designated levy, or had the ordinance made no provision for the collector continuing in office after the expiration of the year for which he was first elected, a different case might have been presented as to the liability of the sureties. But we are not now called on to decide such a case. If any effect is to be given to the provision of the ordinance and the express stipulations of the bond as to the duration of the collector's term, the sureties must be held to have guaranteed the fidelity of their principal during the whole of his term of office—and that term included not only the specified year, but whatever time beyond he continued in office by virtue of his first election.

Lynn, *et al. vs.* Mayor, &c. of Cumberland.

The views we have just expressed upon the controlling question in the case are sufficient to indicate that the Circuit Court was right in overruling the demurrer to the third count of the declaration, and in sustaining the demurrers to the fifth, sixth, seventh, twelfth and thirteenth pleas, and to the equitable pleas. We discover no error in overruling the demurrers to the replications. The fourth count of the declaration was abandoned, and we have, therefore, no occasion to determine whether the demurrer to it ought to have been sustained or not.

The third plea alleged that whatever injury the plaintiff sustained, it sustained by reason of its own wrong; and the ninth that Lynn was not authorized to collect for the second fiscal year, because no warrant under the ordinance had been issued to him. Both of these pleas were ruled bad on demurrer. The questions raised by them were presented by other pleas, and even if they were otherwise free from error the fact that the same defences were set forth in other pleas upon which issues were finally joined, was of itself a sufficient reason for ruling the demurrer good as to the third and ninth pleas. But beyond this it was not material, so far as the sureties were concerned, whether a warrant to collect had been delivered to Lynn or not. The only office of a warrant is to enable the collector to enforce payments. Taxes voluntarily paid to him he became accountable for though he had received no warrant, and his failure to pay them over fixed a liability upon his sureties. 2 *Brandt on Suretyship, sec.* 523.

The remaining questions arise upon the five bills of exception which are contained in the record.

The first exception was taken to the admission in evidence of the tax-books of 1887–8, showing the amounts collected by Lynn on account of the second fiscal year. It was objected that these books were not competent

evidence because, first, the tax-books did not specify (as required by the ordinance,) in each tax-payer's account the amount levied for general purposes, the amount levied for interest, and the amount levied for the sinking fund as separate items, but gave only the aggregate of these several items in each instance; secondly, because the warrant authorizing the collector to make the collections had not been signed by the Mayor and attested by the clerk; and thirdly, because the sureties were not liable on the bond for defaults made during the second fiscal year. What has been already said disposes of the second and third objections, and the first is likewise untenable. It was not material, so far as respects the liability of the sureties, whether the city officers made up the tax-books in strict accordance with the ordinance or not. "Defects in a warrant or tax-list may be a good reason for not executing the warrant, but a collector having collected money without objection by the tax-payers is liable to account therefor, and his sureties cannot, by reason of such defects, excuse themselves from paying the money collected by the principal in the bond, wherein they have bound themselves that he 'shall well and faithfully perform all the duties of his office.'" 2 *Brandt on Suretyship,* sec. 523; *Cooley on Tax.,* 498, 500. There was, consequently, no error committed by the ruling set forth in the first exception.

It appears by the record that after the suit had been instituted the Circuit Court appointed Mr. Richmond and Mr. Devecmon to audit the accounts between the city and the tax collecter; that Mr. Richmond called upon the counsel of the defendants and requested them to deliver to him the tax-books and the water-rent books for both fiscal years; that these books were brought to his office, and that Lynn explained the entries in them, and pointed out those which showed that the money had

been collected; that Mr. Richmond copied all of the actual cash items, viz., the items in Lynn's handwriting indicating that Lynn had received the money, and added them up and that he did not charge Lynn with a single item where there was no entry in the books against him. The audit thus made having been quashed in accordance with the decision of this Court in *Wisner vs. Wilhelm*, 48 *Md.*, 1, the witness was asked to state the aggregate amounts of the taxes as shown by Lynn's entries in the tax-books for the two fiscal years. He replied that he could state from memory that the amount for the fiscal year 1886–7, was over forty thousand dollars, and for the second year thirty-eight thousand and thirty-five dollars, but that he could, if allowed to refresh his recollection by a reference to the additions in his own handwriting and made by him whilst stating the audit, give the amounts with greater certainty. Defendants objected to the witness being permitted to state the sum of said figures, but the Court overruled the objection, stating at the same time to the jury, that the additions of Mr. Richmond were not conclusive on them, but that it was the right of the jury to ascertain from the books themselves whether the amounts were properly added up. The witness then after refreshing his recollection by an inspection of the memorandum or audit made by himself, stated, independently of the paper, the amounts for each year. To this ruling the second exception was taken.

It cannot be doubted that the admissions made by Lynn to Mr. Richmond as to the several amounts which he, Lynn, had collected, were competent evidence to go to the jury. The tax-books were before the jury and these admissions that the items appearing by Lynn's own entries and statements to have been collected, had in fact been collected by him, were not only admissible against him but also against his sureties. *McShane and*

*Rodgers vs. Howard Bank,* 73 *Md.,* 135. These entries which went to make up the aggregate sums collected for the two years numbered many hundred. It would have been impossible for the jury to carry these figures in their minds if they had been merely read off by the witness to them; and had the jurors undertaken to transcribe them for the purpose of adding them up themselves, the trial would have been greatly and needlessly protracted. When books and documents introduced in evidence at a trial are multifarious and voluminous, and of such a character as to render it difficult for the jury to comprehend material facts without schedules containing abstracts thereof, it is within the discretion of the Court to admit such schedules verified by the testimony of the person by whom they were prepared, allowing the adverse party an opportunity to examine them before the case is committed to the jury. *Boston & Worcester Railroad Corporation vs. Dana,* 1 *Gray,* 83; 1 *Green. Ev.,* sec. 93. The evidence excepted to did not go quite that far. Mr. Richmond testified only to the sum total, as added up by himself, of the items which Lynn had admitted to him had been collected. And this evidence went in accompanied by a caution from the Court that the jury were not bound by that addition, but were at liberty to make the calculation themselves from the books then in evidence before them. The fact that Mr. Richmond referred to the rejected audit to refresh his recollection did not affect the admissibility of his testimony for, after having refreshed his memory, he spoke, from an independent recollection and not from the audit. There was in our opinion no error made in the ruling complained of in the second exception.

The third and fourth exceptions present the same questions as to the admissibility of the water-rent books and the testimony of Mr. Richmond in regard to them, that were raised by the first and second exceptions in

respect to the tax-books; and for the reasons already given we hold the rulings brought up by them to be correct.

The fifth or remaining exception relates to the rulings on the prayers.

The appellee's first instruction had reference to the appellee's right to recover for defaults of Lynn during the first year, and no objections are made to it in the brief of the appellants.

The legal proposition contained in the second instruction is the one discussed in the beginning of this opinion, viz., the liability of the sureties for moneys collected by Lynn during his second fiscal year, and for which he had failed to account. As we have already decided that their responsibility extended to that year a further consideration of that subject or a repetition of the reasons upon which that conclusion is founded, is unnecessary. The appellants' prayer presented the converse of the proposition announced by the second instruction of the appellee and sought to restrict the recovery to the first year alone. It was therefore properly rejected.

The third instruction told the jury that if they should find for the plaintiff for both years, it would not be necessary for them to specify the amounts due on each year separately. This was obviously correct. The verdict could only be one entire sum, though amounts were due for each year.

By the fourth instruction the jury were told that the reports made by Lynn to the Mayor and City Council, and showing the sums collected by him, were *prima facie* correct, and that it was incumbent on the defendants to point out errors therein, if any there were. We see no objection to this instruction. Lynn's reports of his collections were written admissions by him of the amounts which had come into his hands in virtue of his

Lynn, *et al. vs.* Mayor, &c. of Cumberland.

office, and as against him and his sureties were undoubtedly *prima facie* correct.

The fifth instruction informed the jury that the entries made by Lynn in the tax-books and water-rent books, showing receipts of money by him, were *prima facie* evidence that those sums were collected by him, and that it was incumbent on the defendants to point out the errors therein, if any there were, and that the evidence of Lynn and others that there were errors "without designating specifically which they were, is not sufficient in itself to relieve the defendants from such charges as have not been specifically pointed out as errors." This instruction is also correct. The mere statement of Lynn, or of any one else, that there were errors in the entries was not sufficient to overcome the probative force of those entries as admissions, and being, as they were, *prima facie* evidence against Lynn and his sureties, it was incumbent upon the defendants, if they wished to avoid their effect, to show wherein they were erroneous or inaccurate. The *prima facie* case was sufficient to sustain a recovery until rebutted, and a general assertion that errors existed without a designation of what they were, was not definite enough to overcome the plaintiff's proof.

But one observation more is required. When the Circuit Court quashed the audit to which allusion has been made, it imposed upon the plaintiff the costs incurred in making the audit, but the clerk in entering up judgment upon the verdict against the appellants inadvertently included those costs in the costs of the case to be paid by the defendants. The plaintiff will therefore be required to remit seven hundred dollars of the taxed costs in the Court below—that sum being payable by it for the expenses of the audit.

There being no errors in the rulings excepted to, the judgment appealed from will be affirmed, with costs.

> *Judgment affirmed, with*
> *costs in this Court, and*
> *in the Court below.*

(Decided 20th June, 1893.)